IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------X
:
ARIANNA DURANT, PPA BLAKE DURANT :
    Plaintiff : 15 CV 1183 (JBA)
v. :
:
:
TARGET STORES, INC., :
    Defendant/Cross Claimant :
:
v. :
: SEPTEMBER 20, 2017
:
AMERICAN SPECIALTIES, INC. :
    Defendant/Cross Defendant :
------------------------------------------------------X

## RULING ON DEFENDANT AMERICAN SPECIALTIES, INC.'S MOTION TO COMPEL AND FOR DISCOVERY SANCTIONS AGAINST TARGET (Dkt. #64)

On or about July 6, 2015, plaintiff Arianna Durant, PPA Blake Durant, commenced this action against defendants Target Stores, Inc. and American Specialties, Inc. in the Superior Court of Connecticut, Judicial District of Bridgeport, arising out of injuries sustained by the minor plaintiff from the handicap rail in a Target restroom;[1] the action was removed to this court on August 4, 2015 by defendant Target. (Dkt. #1).[2] On March 22, 2016, American Specialties filed its Answer with special defenses (Dkt. #18), and on April 11, 2016, Target filed its Answer with affirmative defenses and special defenses. (Dkt. #20). On the

---

[1]Specifically, plaintiff alleges that on July 29, 2014, the handicap bar in the family restroom in the Target store in Trumbull, Connecticut fell on the minor plaintiff's hand, causing the amputation of her pinkie finger.

[2]There were two related cases pending before Judge Arterton involving injuries sustained from the handicap bar in the restroom in Target stores in Connecticut -- this matter, which was removed to this court in August 2015, and <u>Gawel v. Target Stores, Inc. et al</u>, 16 CV 371(JBA), which was removed from state court to this court in March 2016. On September 8, 2017, plaintiff in <u>Gawel</u> filed a Stipulation of Dismissal of his claims against Target. (Dkt. #64).

same day, Target filed a Cross Claim against American Specialties (Dkt. #21), followed by a two-count amended Cross Claim filed on November 4, 2016 seeking common law indemnification, and alleging breach of implied covenant of merchantability. (Dkt. #29). American Specialties filed its Answer to Target's Cross Claim on May 5, 2016 (Dkt. #22), followed by its Answer to the amended Cross Claim and affirmative defenses on December 12, 2016. (Dkt. #34).

On May 19, 2017, this case was referred from U.S. District Judge Janet Bond Arterton to this Magistrate Judge for a ruling on Target's then-pending Motion for Discovery Sanctions against American Specialties. (Dkt. #52; see Dkts. ##47-48). Following a telephonic discovery conference held on June 13, 2017 (Dkts. ##58, 62), this Magistrate Judge issued an order denying Target's motion, "without prejudice to renew as appropriate, by agreement of counsel during the telephonic status conference . . . ." (Dkt. #63).

On August 8, 2017, defendant American Specialties filed the pending Motion to Compel and for Discovery Sanctions against Target (Dkt. #64) with brief and exhibits in support.[3] On August 24, 2017, Target filed its brief in opposition (Dkt. #66; see also Dkt. #65),[4] and on September 5, 2017, American Specialties filed its reply brief. (Dkt. #67). Two

---

[3]Attached to American Specialties' brief are the following exhibits: copy of Interrogatories Propounded by the Defendant American Specialties, Inc. to be Answered by Defendant Target Corporation d/b/a Target Stores, Inc., dated November 4, 2016, with Target's responses (Exh. A); copy of Defendant American Specialties, Inc.'s Request for Production of Documents from Co-Defendant Target Stores, Inc., dated May 26, 2016, with Target's responses (Exh. B); copy of Notice of Deposition for February 1, 2017, dated January 20, 2017 (Exh. C); copy of Notice of Deposition for March 10, 2017, dated February 23, 2017 (Exh. D); copies of email correspondence, dated January 20 and 26, February 14, 21, 22, 23 and 26, March 2, 5, 8, 15, 16 and 26, and April 5, 8, 18, 19, 21, 24 and 26, 2017 (Exh. E); copies of Notices of Deposition for May 2, 2017, dated April 26, 2017 in both Durant and Gawel (Exhs. F-G); copy of deposition transcript of Christopher Altieri, taken on May 2, 2017 (Exh. H); copies of spreadsheets and email, dated September 21, 2015 (Exh. I); and copies of email correspondence, dated November 1 and 10, 2016 (Exh. J).

[4]The following exhibits are attached to Target's brief in opposition: another copy of American Specialties' Interrogatories and Target's responses (Exh. A); another copy of American

days later, Judge Arterton referred this motion to this Magistrate Judge. (Dkt. #68). Discovery closed in this case on April 1, 2017. (Dkt. #46).[5]

For the reasons stated below, defendant American Specialties' Motion to Compel and for Discovery Sanctions Against Target (Dkt. #64) is granted in limited part.

## I. BACKGROUND

On or about November 4, 2016, American Specialties propounded Interrogatories and Requests for Production of Documents upon Target. (Dkt. #64, at 1-2 & Exh. A). As American Specialties explains, in Target's responses to American Specialties' Interrogatories and Requests for Production, Target did not mention "any person or team from Target's corporate headquarters in its answer disclosing persons with discoverable information or knowledge of the details of the incident." (Dkt. #64, at 3). On May 2, 2017, American Specialties took the Rule 30(b)(6) deposition of Target's corporate designee, Christopher Altieri, for this lawsuit and for the related Gawel lawsuit. (See Dkt. #64, Exhs. F-H; see also id., Exhs. C-E (evidencing scheduling issues)). The Notice of Deposition included a Schedule A, which requested information related to the handicap grab bars and bathroom fixtures. (Id., Exhs. F-G). On April 28, 2017, Target served its objections to some of the topics listed in the Schedule A. (Dkt. #66, Exh. D).

At his deposition, Altieri testified that Target has a "Fixture Team"; Altieri explained

---

Specialties' Requests For Production of Documents and Target's responses (Exh. B); copy of Defendant Target Corporation's Initial Disclosures, dated October 27, 2016 (Exh. C); ND copy of Defendant Target Stores, Inc.'s Objections to Requests for Production and Topics for Deposition, dated April 28, 2017 (Exh. D).

[5]On May 1, 2017, defendant American Specialties filed its Motion for Summary Judgment against plaintiff and Target. (Dkt. #50). On the same day, Target filed its Motion for Summary Judgment as to plaintiff's claims against it and as to Target's claims against the cross claim defendant, American Specialties. (Dkt. #51). These motions are pending before Judge Arterton. (See Dkts. ##53-57, 59-61).

3

that the "Fixture Team" is "a team at headquarters that is responsible for fixtures in the building and then it breaks down from there. We have people that specialize in restroom fixtures or retail fixtures. It goes on from there but there's a team specifically dedicated to fixtures." (Dkt. #64, Exh. H, at 99-100, 101-02). Altieri explained that the "fixture team would have the responsibility of overseeing fixtures including the handicap safety rail[s] like the ones involved in the Gawel and Durant accidents[.]" (Id. at 103).[6]

Additionally, when asked about documents "generated between the property management team and the fixture team when this wholesale evaluation and replacement was done[,]" Altieri testified that he "created a Microsoft Excel spreadsheet" but that he had not produced it earlier because "[w]e were not able to find that." (Id. at 132). As Altieri explained, the charts he produced at the deposition reflected the investigation into the handicap safety rails and the lack of end caps; Altieri also explained that the documents were produced by the fixture team at headquarters. (Id. at 133-34; see also Dkt. #64, Exh. I). Additionally, Target produced emails at this deposition that indicated that four people investigated the matter and, "as far as who installed [the handicap safety bars], it will take some investigation and [the people involved in investigating the matter] can't guarantee [that they would] be able to dig up that level of detail. [The individuals conducting the investigation] will have to reach out to . . . Construction partners." (Dkt. #64, Exh. J, at 3). No additional emails relating to any actions discussed in these emails were produced.

American Specialties argues that in addition to Altieri's failure to provide information about the topics disclosed in the Schedule A attached to his deposition notice, Target failed to disclose documents, statements, or communications relating to this third-party vendor,

---

[6]Attorney Dwyer asserted her objection to this line of questioning by stating "This is – this is not responsive to your – And his investigation." (Id. at 104).

and Target did not disclose the existence of the fixture team, identify its members as persons with discoverable information, or produce copies of the fixture team's documents in response to American Specialties' Requests for Production. (Dkt. #64, at 2-14).[7] Accordingly, American Specialties requests an order compelling the production of all documents and written communications, as well as the identity of all persons – on the fixture team or otherwise – with any knowledge of the incident. (Dkt. #64, at 14-15).

Target counters that it responded to American Specialties' Requests and Interrogatories accurately and to the extent there was information that American Specialties now claims was not provided, Target argues such information was never requested. (Dkt. #66, at 5-9). Additionally, according to Target, it objected to three out of the five requests in the Schedule A attached to the Notice of 30(b)(6) Deposition, and to the extent American Specialties took issue with the objections, it never "presented the issue to the court for a determination." (Id. at 9-10; Dkt. #66, Exh. D). According to Target, there was no request for information related to the hiring of an "alleged third-party vendor[,]" nor does Target have documents relating to the hiring of the third-party vendor. (Id. at 10-11). Additionally, Target contends that Altieri testified to the existence of the fixture ream and the role it

---

[7]American Specialties noticed four depositions -- three fact witnesses and one corporate designee deposition – on January 20, 2017 for February 1, 2017, the discovery deadline as of that time, but all were continued by agreement "at the request of counsel for Target who was on trial at the time of the noticed depositions." (Dkt. #44, at 2). In the parties' Joint Status Report, filed on February 14, 2017, the parties sought an extension of the discovery deadline to April 1, 2017 to accommodate these additional depositions. (Id. at 2-3). Although Target claimed that the depositions were never previously noticed, American Specialties reported to Judge Arterton that its counsel spoke to counsel for Target prior to noticing the depositions, and that American Specialties' counsel notified counsel for Target by email on January 16, 2017. (Id. at 3). Judge Arterton held a telephonic conference with counsel on February 21, 2017. (Dkt. #45). There is no transcript of said conference call; counsel for Target recites that Judge Arterton granted American Specialties' request in part, permitting the deposition of the corporate designee and one fact witness, but "did not, however, allow [American Specialties] to conduct all three of the fact witness depositions it had requested due to the fact that no discovery had been done by [American Specialties] up until this point." (Dkt. #66, at 4).

5

played after the two incidents, notwithstanding the objections pending as to subsequent remedial measures. (Id. at 11). Target also contends that Altieri was prepared and was an appropriate designee, and American Specialties has "failed to establish its entitlement to further depositions over three months since Altieri's deposition was completed." (Id. at 15 (emphasis omitted)).

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). "The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)(footnote omitted), quoting FED. R. CIV. P. 26(b)(1) advisory committee notes to 2015 amendment, aff'd, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016). Conversely, the "party resisting discovery has the burden of showing undue burden or expense." Id. (additional citations omitted). "[T]o fall within the scope of permissible discovery, information must be 'relevant to any party's claim or defense.' In order to be 'relevant' for Civil Rule 26 discovery purposes, information and evidentiary material must be 'relevant' as defined in Rule of Evidence 401." Bagley v. Yale Univ., No. 13 CV 1890 (CSH), 2015 WL 8750901, at *8 (D. Conn. Dec. 14, 2015); see FED. R. CIV. P. 26(b)(1), advisory committee notes to the 2015 amendments. Federal Rule of Evidence 401(a) and (b) defines "relevant evidence" as

6

evidence having "any tendency to make a fact more or less probable than it would be without the evidence," and the "fact is of consequence in determining the action." Discovery, however, "is concerned with 'relevant information' – not 'relevant evidence' – and that as a result of the scope of relevance for discovery purposes is necessarily broader than trial relevance." 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 26, V. DEPOSITIONS AND DISCOVERY (February 2017 Update), citing, inter alia, Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D. Conn. 2005). As amended Rule 26(b)(1) explicitly states,"[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable."

Target's response to American Specialties' Motion rests on its position that it responded accurately, and filed objections to requests, and to the extent that American Specialties was not satisfied with such objections, it had an obligation to seek court intervention in a timely fashion. (Dkt. #66, at 5-14, 16). American Specialties counters, however, that although there were objections, it only learned of the existence of documents it considers responsive to its requests at the deposition of Target's Rule 30(b)(6) designee. (Dkt. #67, at 1-9).

Altieri's deposition transcript makes clear that he was not the person from Target most knowledgeable about the bathroom fixtures at issue in this case. Altieri disclosed the existence of a fixture team when testifying about the disposal of the handicap bar in the Gawel incident. (Dkt. #64, Exh. H at 101). When he was then asked what is the fixture team, Altieri acknowledged that he was "struggl[ing] with having knowledge of everything[]" but that he was not knowledgeable about the specifics of the fixture team. (Id. at 102 ("I'm not sure if there is one that specifically focuses on handicap safety rails but there is a specific fixture team and that's who I was in contact with from headquarters.")). As stated above,

7

Altieri testified that the "fixture team would have the responsibility of overseeing fixtures including the handicap safety rail like the ones involved" in these cases. (Id. at 103). As a party with the responsibility of overseeing bathroom fixtures, including the handicap safety rail at issue in this lawsuit, defendant Target was obligated to disclose the existence of this team, and to identify those involved. In its Initial Disclosures, Target identified individual team members who have knowledge of "facts surrounding [the] incident[]" but did not disclose that Target has a team that oversees bathroom fixtures, including the fixtures at issue in this case. (See Dkt. #66, Exh. C). Target's assertion that American Specialties did not request this information is wrong.[8] In its November 2016 Interrogatories, American Specialties requested, inter alia, the following:

> 4. State the name and address for each person who has knowledge of any details concerning the incident wherein Arianna Durant was injured while on Co-Defendant's premises as set forth in the Plaintiff's complaint, including said details known by each person.

(Dkt. #64, Exh. A at 5).[9]

---

[8]Actually, Target's counsel went further than asserting that American Specialties did not request this information; Target's counsel stated on the record at the Rule 30(b)(6) deposition that opposing counsel "should have asked for [things] ahead of time like good lawyers[.]" (Dkt. #64, Exh. H at 58).

[9]In response to Interrogatory No. 4, rather than providing the names and addresses for "each person who has knowledge of any details[,]" Target claims that it "provided the names of Target Team Members who were involved in the incident itself." (Dkt. #66, at 6). But that is not what is asked in that Interrogatory.

American Specialties also posed the following Interrogatory:

6. Please identify any colleagues, consultants, mechanics, or any persons/entities with whom the Co-Defendant consulted/contracted in regard to the modification and/or installation of the safety bar and set forth:

    a. The nature of any such consultations/discussion;

    b. The names and addresses [of] any persons and/or entities who participated in such consultations/discussions;

American Specialties also requested the production of:

> 2. Any and all statements, signed or unsigned, whether written or transcribed from any listening or recording device or obtained from any other means, which were made by or obtained from the Co-Defendant concerning any manner of the alleged incident.
>
> . . .
>
> 10. Complete copies of all documents, work orders, spreadsheets, invoices, and checks relating to work the Co-Defendant did on the subject bathroom, including the subject safety bar, from July 2009 until the present.
>
> . . .
>
> 14. Copies of any and all documents concerning the purchase, installation, and maintenance of the subject safety bar referenced in Plaintiff's Complaint and present at the scene of the alleged accident on July 29, 2014.

(Dkt. #64, Exh. B at 3, 5).[10] Additionally, included in the Schedule A attached to the Notice of Deposition for Target's 30(b)(6) witness were requests, among other inquires, for the following information:

> 3. Any and all investigations, inspections, [and/or] disciplinary reports related to the cause of the accident involving Arianna Durant on or about July 29, 2014;
>
> . . .

---

> c. And the dates of such consultations/discussion.

(Dkt. #64, Exh. A at 5-6). Target responded that it did not install the bar, and "to this day, does not know who installed the grab bar, despite its search of records to determine such identity." (Dkt. #66, at 7 (emphasis and footnote omitted); see Dkt. #64, Exh. A at 5-6).

[10]The term "document" is defined as "the original, all non-identical copies, and all drafts of any book, pamphlet, letter, or other form of correspondence, . . . or other form, chart, . . . or other verbal, numerical or pictorial recording, whether printed, typed, handwritten, drawn, recorded on film or tape, or within any data processing system, or recorded by any other means." (Id. at 1).

In response to Request No. 13 in which American Specialties requested documents identifying and/or confirming the manufacturer and model of the subject safety bar (Dkt. #64, Exh. B at 5), Target produced photographs bearing the responsive information. (Id.).

> 7. The assembly, installation, repair, maintenance and/or upkeep of the handicap grab bars and/or bathroom fixtures, at Target department store in Trumbull, CT;
>
> . . .
>
> 8. Any tests, inspections and/or evaluations conducted by . . . Target . . . and/or its employees regarding the bathroom fixtures at Target department store in Trumbull, CT.

(Dkt. #64, Exh. F at 3).[11] In response to several requests in Schedule A for the identity of individuals involved in, and documents related to the assembly, installation, repair, maintenance and/or upkeep of the handicap grab bars and/or bathroom fixtures, Target posed its objection that the term "bathroom fixtures" is overbroad; objected on grounds that the requests seek "non-admissible evidence of subsequent remedial measures and therefore [are] not reasonably calculated to lead to the discovery of admissible evidence[]"; and responded that notwithstanding its objection, "prior to" the accident, "Target did not assemble, install, maintain and/or do any upkeep to the grab bar at issue as it was not aware of the need to do same[.]" (Dkt. #66, Exh. D at 4-5).[12] This response, however, is inconsistent with Altieri's testimony about the existence and role of the fixture team.

---

[11]Despite all of these foregoing requests, at the deposition, Target's counsel insisted that the construction documents did not need to be produced because American Specialties' "topics do not mention construction at all[.]" (Dkt. #64, Exh. H at 56-57; see also id. at 58-59 ("Where does it say – about construction and installation? Is that a topic? It is not. Okay.")).

[12]Additionally, on June 13, 2017, this Magistrate Judge held a telephonic discovery conference regarding Target's Motion for Sanctions filed in this action (Dkt. #47), during which call, counsel for Target withdrew its Motion for Sanctions in light of its pending Motion for Summary Judgment, with the expectation that a ruling on summary judgment will address the issues brought up in its then-pending motion. Later in the call, the Rule 30(b)(6) deposition was discussed, during which Target's counsel articulated her "position [that] discovery is over[,]" the deposition took place a "long time ago," and that Target does not need to produce evidence of remedial measures. Following the conference call, this Magistrate Judge denied Target's Motion for Sanctions "without prejudice to renew as appropriate, by agreement of counsel during the telephonic status conference . . . ." (Dkt. #63).

This Magistrate Judge is not assigned a court reporter; accordingly, the Court relies on its notes of the conference.

Target asserts to this Court that it did not need to disclose the existence of the fixture team as "Chris Altieri testified as to the [f]ixture[] [t]eam and the role it played after the two incidents occurred[,]" which information Target had objected to as "subsequent remedial measures[.]" (Dkt. #66, at 11)(emphasis in original). According to Target, "[t]he fixture[] committee's involvement is a clear subsequent remedial measure as it was involved in replacing grab bars in various locations in Connecticut." (Id.).[13] However, Altieri's deposition transcript paints a different picture of the existence and role of this fixture team.

Altieri testified that he "was brought in from headquarters" by the "headquarters fixtures team" after the "second incident" so that he could "figur[e] out what [Target] had in every – -what models we had, what were missing end caps, what - - and we didn't start replacing these until I was brought in until after the second incident occurred." (Dkt. #64, Exh. H at 99-100). Altieri then testified about his task of gathering information, after the fact, to repair the existing handicap bars. (Id. at 101). He did not testify that the fixture team's involvement was limited to subsequent remedial measures taken by Target. Rather, he testified, as discussed above, that the fixture team located "at headquarters . . . is responsible for fixtures in the building[.]" (Id. at 102). They "specialize in restroom fixtures or retail fixtures." (Id.). Altieri's testimony regarding the fixture team is not, as Target asserts, limited to the "role it played after the two incidents occurred." (Dkt. #66, at 11)(emphasis in original). The existence of the team and the role it plays regarding the fixtures at issue in this case is relevant, and Target failed to disclose this information when requested by American Specialties. A party objecting to discovery "must state whether any

---

[13]Evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. FED. R. EVID. 407.

responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). In this case, Target did not articulate its basis for withholding responsive information to American Specialties Interrogatories and Requests for Production, and it was not until the eve of Altieri's deposition that Target objected to producing certain documents on grounds that such documents would be evidence of subsequent remedial measures. American Specialties, however, is not blameless.[14] Despite Target's objections in response to the Schedule A, and despite the information gained and the documents produced at Altieri's deposition, American Specialties chose not to move promptly to compel production of this information.[15] Instead, American Specialties waited four months after the April 1, 2017 discovery deadline, and three months after Altieri's deposition, to file this Motion to Compel and for Sanctions. Accordingly, discovery will be reopened for the very limited purpose of producing responses to Interrogatory No. 4, Request for Production Nos. 2, 10 and 14; and responses to Requests Nos. 3, 7 and 8 in Schedule A, limited to responses relating to the role and involvement of the fixture team, **on or before October 16, 2017**. Additionally, Target shall produce for deposition the member of the fixture team most knowledgeable about the fixtures at issue in this case **on or before October 31, 2017**.

---

[14] Although American Specialties emphasizes that Target's objections were served at 3:55 p.m. on Friday, April 28, 2017, "just in advance of the Monday, May 1, 2017 deposition[,]" the late nature of the responses does not excuse American Specialties from reviewing such responses in advance of the deposition, or, frankly, in advance of the filing of their pending motion. (Dkt. #67, at 1-2; see Dkt. #64, at 8 (reciting that during the June 13, 2017 telephone conference with this Magistrate Judge, "Target for the first time asserted that it was not required to produce evidence of what it called 'remedial measures' and implied, although did not so state, that it had declined to comply with American's discovery requests and/or held back documents on this basis.")).

[15] While the Court agrees that American Specialties was not expected to file a motion, and that the Court would not be expected to rule, prior to the deposition scheduled for the next business day (see Dkt. #67, at 2, n.1), American Specialties let three months pass before filing this pending Motion to Compel and for Sanctions.

To the extent that any documents are withheld, Target shall state its objection and, if withheld on the basis of privilege, shall produce a detailed privilege log **on or before October 20, 2017**.

## II. CONCLUSION

For the reasons stated above, defendant American Specialties, Inc.'s Motion to Compel and for Discovery Sanctions against Target (Dkt. #64) is granted in limited part.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, No. 15-3055, 2016 WL 6787933 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 20th day of September, 2017.

    /s/ Joan G. Margolis, USMJ  
    Joan Glazer Margolis  
    United States Magistrate Judge